# United States Tax Court

REVIEWED

166 T.C. No. 4

MAMMOTH CAVE PROPERTY, LLC, MAMMOTH CAVE MANAGER, LLC, PARTNERSHIP REPRESENTATIVE,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 5401-24.                                Filed March 9, 2026.

————

P is a limited liability company that is treated as a partnership for federal tax purposes. P is subject to the centralized partnership audit regime as established by the Bipartisan Budget Act of 2015, Pub. L. No. 114-74, 129 Stat. 584.

P timely petitioned this Court challenging R's Notice of Final Partnership Adjustment (FPA) because of alleged errors in the Notice of Proposed Partnership Adjustment. P contends that because of these errors the period of limitations on making adjustments pursuant to I.R.C. § 6235(a) expired and therefore the FPA was invalid.

*Held*: R's FPA issued to P is timely pursuant to I.R.C. § 6235(a)(2) and is valid.

KERRIGAN, *J.*, wrote the opinion of the Court, which URDA, *C.J.*, and BUCH, NEGA, PUGH, ASHFORD, COPELAND, JONES, TORO, GREAVES, MARSHALL, WEILER, WAY, LANDY, ARBEIT, GUIDER, JENKINS, and FUNG, *JJ.*, joined.

————

*Gregory P. Rhodes*, *Sidney W. Jackson IV*, *Emily C. Ellis*, *Kristin Martin Centeno*, *Ronald A. Levitt*, *Michelle A. Levin*, *Sarah E. Green*, *Carneil D. Wilson*, and *Olla F. Jaraysi*, for petitioner.

*Richard J. Hassebrock*, *Andrew Yamanaka Belter*, *Matthew T. James*, and *Kerrington A. Hall*, for respondent.

OPINION

KERRIGAN, *Judge*:  Petitioner, Mammoth Cave Property, LLC, is a limited liability company that is treated as a partnership for federal income tax purposes under the Bipartisan Budget Act of 2015 (BBA), Pub. L. No. 114-74, § 1101, 129 Stat. 584, 625.[1]  Respondent issued a Notice of Final Partnership Adjustment (FPA), disallowing a charitable contribution deduction petitioner claimed for 2018.

This syndicated conservation easement case is before the Court on petitioner's Motion for Summary Judgment (Motion).  Petitioner contends the period of limitations had expired before respondent's issuance to petitioner of an FPA on January 5, 2024.  For the reasons discussed below, we disagree.

*Background*

The following facts are derived from the parties' filings to date. The facts are stated solely for purposes of ruling on the Motion and not as findings of fact in this case.  *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).  Petitioner

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code (Code), Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

In 2015 Congress enacted BBA § 1101, 129 Stat. at 625–38, which amended the Code by striking the provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71, and enacting new provisions using many of the same Code section numbers as TEFRA.  BBA § 1101(a), (c)(1), 129 Stat. at 625–37.  The BBA generally governs partnership audit and adjustment procedures for partnership returns filed for partnership years beginning after December 31, 2017.  BBA § 1101(g), 129 Stat. at 638.  Because the BBA amended the Code by striking the TEFRA provisions and enacting new provisions using many of the same Code section numbers, we will parenthetically indicate whether we are referring to the BBA or to TEFRA when the context may not be otherwise clear.

was a Kentucky limited liability company with its principal place of business in Missouri when it timely filed its Petition.

Petitioner comprised four members during the 2018 tax year: (1) McLand Investments, LLC (McLand) (90% ownership), (2) Mammoth Cave JV, LLC (MCJV) (8% ownership), (3) Commonwealth Raw Materials, LLC (1% ownership), and (4) Randolph N. Reynolds (1% ownership). McLand was formed and is managed by Mammoth Cave Manager, LLC (MCML), and Matthew Mills served as the manager of MCML. Mr. Mills was also one of the two organizers of MCJV. Petitioner, MCJV, and MCML are all related parties that, at the time petitioner filed its Form 1065, U.S. Return of Partnership Income, shared the same address: 6439 Highway 99, Welsh, Louisiana 70591 (Welsh address).

Petitioner filed its 2018 Form 1065 on September 16, 2019. On its return petitioner designated MCJV as its partnership representative and Timothy Pollock as MCJV's designated individual. Petitioner provided the Welsh address as MCJV's address.

On October 22, 2020, petitioner received a Notice of Administrative Proceeding (NAP) listing the Welsh address as the address of the partnership representative. On November 13, 2020, Mr. Pollock, the designated individual for MCJV, received a copy of the NAP.

On December 14, 2020, petitioner submitted to respondent Form 8979, Partnership Representative Revocation, Designation, and Resignation (December 2020 Form 8979), on which it sought to revoke its designation of MCJV as its partnership representative and to designate MCML as its new partnership representative. Petitioner listed the Welsh address as MCML's address. Petitioner identified Mr. Mills as a new designated individual. Mr. Mills's address was listed as 718 W. Business Highway 60, Dexter, Missouri 63841 (Dexter address).

Respondent rejected the December 2020 Form 8979 because it did not bear petitioner's employer identification number. Petitioner submitted a second Form 8979, dated March 26, 2021 (March 2021 Form 8979), which sought to revoke MCJV and designate MCML as petitioner's partnership representative and replace the designated individual with Mr. Mills. The March 2021 Form 8979 again listed the Welsh address as MCML's address.

Respondent received petitioner's resubmitted March 2021 Form 8979 on April 2, 2021. On October 28, 2021, respondent sent Messrs.

Pollock and Mills Notices of Partnership Representative Status confirming the resignation and designation, respectively, effective April 2, 2021, the date that the March 2021 Form 8979 was received and faxed to petitioner's power of attorneys copies of the Notices of Partnership Representative Status.

On December 17, 2021, respondent issued to MCML, as petitioner's partnership representative, an unsigned Form 872–M, Consent to Extend the Time to Make Partnership Adjustments, for petitioner's 2018 tax year. Petitioner did not agree to an extension.

On January 7, 2022, Mr. Mills as designated individual for MCML signed two Forms 8822–B, Change of Address or Responsible Party—Business, requesting that petitioner's and MCML's addresses be changed from the Welsh address to the Dexter address. Sidney Jackson, an attorney for petitioner, submitted the Forms 8822–B by certified mail to the Internal Revenue Service (IRS) service center in Ogden, Utah, on January 19, 2022. Mr. Jackson submitted Forms 8822–B for petitioner and MCML simultaneously along with 31 other Forms 8822–B for other businesses that Mr. Jackson's firm represents, requesting that they be processed at the Ogden center's "earliest convenience." Petitioner did not provide a copy of the Forms 8822–B to the revenue agent conducting the examination of petitioner's 2018 Form 1065, who worked out of a Post of Duty in Richmond, Virginia.

On May 20, 2022, respondent mailed a Preliminary Partnership Examination Changes, Imputed Underpayment Computation and Partnership Level Determinations as to Penalties, Additions to Tax and Additional Amounts, which described the adjustments that led to this case, to MCML, as petitioner's representative, at the Welsh address. On July 11, 2022, respondent issued to petitioner a Notice of Proposed Partnership Adjustment (NOPPA) describing the adjustments made. Respondent mailed four copies of the NOPPA addressed to petitioner, to two attorneys representing petitioner, and to MCJV, the former partnership representative, but not to MCML. The copy sent to MCJV was sent to the Welsh address and to the attention of Mr. Mills as designated individual. Petitioner does not claim that petitioner, two of its attorneys, its partnership representative, or its designated individual did not receive the July 2022 NOPPA.

Respondent processed petitioner's address change request on August 24, 2022, one month after the NOPPA was issued. The average processing time for an address change is listed as four to six weeks on

the Form 8822–B; however, the IRS experienced significant backlogs in processing returns and other paper mail at its service centers because of the COVID–19 pandemic.[2]

For more than a year after petitioner requested the address changes in January 2022, petitioner and its attorneys continued to list the Welsh address as the partnership representative's address. On March 30, 2023, petitioner filed Form 8984, Extension of the Taxpayer Modification Submission Period Under Section 6225(c)(7), and listed the Welsh address for both petitioner and MCML despite having received confirmation of the address changes to the Dexter address more than six months earlier. On June 6, 2023, almost a year after changing to the Dexter address, petitioner filed Form 8980, Partnership Request for Modification of Imputed Underpayments Under IRC Section 6225(c), again using the Welsh address for the partnership and the partnership representative. Mr. Mills as MCML's designated individual signed the Form 8984, and Mr. Jackson, who submitted the Forms 8822–B on behalf of MCML, signed the Form 8980.

On January 5, 2024, respondent issued to petitioner an FPA for 2018 at the Dexter address. Petitioner filed its Petition on April 4, 2024. In its Petition, petitioner affirmatively alleged that the period of limitations for making adjustments had expired because the NOPPA was sent to the incorrect partnership representative.

## *Discussion*

### I. *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). Under Rule 121(a), either party may move for summary judgment regarding all or any part of the legal issues in controversy. We may grant summary judgment only if there is no genuine dispute as to any material fact and the movant is

---

[2] *See, e.g.*, Treasury Inspector Gen. for Tax Admin., No. 2021-46-064, *Effects of the COVID-19 Pandemic on Business Tax Return Processing Operations* (2021), https://www.oversight.gov/sites/default/files/documents/reports/2021-09/202146064fr.pdf; Treasury Inspector Gen. for Tax Admin., No. 2024-406-020, *The IRS Continues to Reduce Backlog Inventories in the Tax Processing Centers* (2024), https://www.oversight.gov/sites/default/files/documents/reports/2024-03/2024406020fr.pdf.

entitled to judgment as a matter of law. Rule 121(a)(2); *Sundstrand Corp.*, 98 T.C. at 520.

The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. Rule 121(a)(2); *FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74–75 (2001). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmovant. *Sundstrand Corp.*, 98 T.C. at 520. Neither party alleges any genuine dispute of material fact that prevents us from deciding whether the FPA is valid, and we find none.

## II.    *Period of Limitations*

To establish the defense of an expired period of limitations, a taxpayer ordinarily must prove that it filed the statutory return and that the statutory period of limitations has expired. *Robinson v. Commissioner*, 57 T.C. 735, 737 (1972). The parties do not dispute that petitioner's 2018 Form 1065 was timely filed. We need to determine whether the statutory period of limitations has expired.

### A.    *BBA Procedures*

Under the BBA audit procedures, there are three principal notices that are issued: (1) the NAP, (2) the NOPPA, and (3) the FPA. § 6231(a). The NAP informs the BBA partnership that an administrative proceeding has commenced. § 6231(a)(1). The NOPPA informs the BBA partnership of any proposed adjustments. § 6231(a)(2). In the FPA the Commissioner determines final partnership adjustments and the partnership then has an opportunity for judicial review. §§ 6231(a)(3), 6234(a).

Each partnership subject to the BBA audit regime is required to designate a partner or any other person with a substantial presence in the United States as its partnership representative. § 6223(a). The partnership representative has "sole authority to act on behalf of the partnership." *Id.* A person not an individual may be a partnership representative only if a designated individual is appointed. Treas. Reg. § 301.6223-1(b)(3)(i). In the case of an entity partnership representative, the designated individual has the sole authority to act on behalf of the partnership representative and the partnership. Treas. Reg. § 301.6223-2(d). The designated individual has the sole authority to bind the partnership representative and therefore the partnership, its partners, and any other person described by the regulations.

*Id.* subpara. (2)(ii). Section 6231(a) requires the Secretary to mail NAPs, NOPPAs, and FPAs to the partnership and the partnership representative.

The regulations permit a partnership to revoke its designation of its partnership representative or its appointment of a designated individual. *See* Treas. Reg. § 301.6223-1(e). "[A] valid revocation is immediately effective upon the IRS's receipt of the written notification described in paragraph (e)(1) of this section." *Id.* subpara. (3). Respondent does not dispute that petitioner followed the correct procedure to revoke its partnership representative and designated individual and to designate their successors.

As applicable in this case, the NOPPA must be issued within three years of the filing of the partnership return for the taxable year. *See* §§ 6231(b), 6235(a)(1). After the NOPPA and before any assessment, the partnership may submit a request to modify an imputed underpayment set forth in the NOPPA. § 6225(c); *see JM Assets, LP v. Commissioner*, No. 2531-24, 165 T.C., slip op. at 9 (July 2, 2025). The partnership has 270 days from the date the Commissioner mails the NOPPA to submit a modification request to the Commissioner. § 6225(c)(7); *see JM Assets, LP*, 165 T.C., slip op. at 9.

The mailing of an FPA finalizes adjustments made by the Commissioner with respect to a partnership's tax year and concludes the administrative proceeding. Unless the partnership consents to receive it earlier, the Commissioner may not issue an FPA earlier than 270 days after the date on which a corresponding NOPPA was mailed. § 6231(b)(2)(A).

There are limitations on when the Commissioner may issue an FPA. Section 6235 sets forth the period of limitations in which the Commissioner may make adjustments for a partnership's taxable year. Section 6235(a) provides:

> Sec. 6235(a). In general.—Except as otherwise provided in this section or section 905(c), no adjustment under this subchapter for any partnership taxable year may be made after the later of—
>> (1) the date which is 3 years after the latest of—
>>> (A) the date on which the partnership return for such taxable year was filed,

> (B) the return due date for the taxable year, or
>
> (C) the date on which the partnership filed an administrative adjustment request with respect to such year under section 6227, or
>
> (2) in the case of any modification of an imputed underpayment under section 6225(c), the date that is 270 days . . . after the date on which everything required to be submitted to the Secretary pursuant to such section is so submitted, or
>
> (3) in the case of any notice of a proposed partnership adjustment under section 6231(a)(2), the date that is 330 days . . . after the date of such notice.

Subsection (a) authorizes the Commissioner to make an adjustment any time before the end of the latest of the several periods set forth in paragraphs (1), (2), and (3). *See JM Assets, LP*, 165 T.C., slip op. at 11. If within 270 days of the Commissioner's mailing of the NOPPA the partnership seeks modification of the imputed underpayment under section 6225(c), then the Commissioner may mail an FPA up to 270 days "after the date on which everything required to be submitted to the Secretary pursuant to such section is so submitted." *See JM Assets, LP*, 165 T.C., slip op. at 11.

The period of limitations under section 6235 can be extended by agreement between the partnership and the Commissioner. § 6235(b). The time period for submitting a modification is 270 days after the NOPPA is mailed unless a request for an extension is granted. § 6225(c)(7); Treas. Reg. § 301.6225-2(c)(3)(i) and (ii).

B.  *Whether the FPA Was Timely*

To determine whether the FPA was timely, we need to determine whether the FPA was issued within the period of limitations on making adjustments pursuant to section 6235(a). Since in this case there was a modification of an imputed underpayment, section 6235(a)(2) applies.

Petitioner filed the 2018 Form 1065 on September 16, 2019, and the NOPPA was timely issued on July 11, 2022. *See* §§ 6231(b), 6235(a)(1). There is a 270-day period after the date the NOPPA was mailed in which the partnership may submit a modification of the

imputed underpayments unless the period is extended with the consent of the Commissioner. § 6225(c)(7); *see JM Assets, LP*, 165 T.C., slip op. at 9. Here, the deadline to submit a request to modify the imputed underpayment was April 7, 2023. Petitioner timely requested a 60-day extension of the time to submit a request for modification on March 30, 2023. Respondent consented to the extension, and petitioner timely submitted a modification request on June 6, 2023.

Under section 6235(a)(2), the time for issuing an FPA "in the case of any modification of an imputed underpayment" is 270 days plus any extended period granted to the taxpayer under section 6225(c)(7). In this case there was such a modification; therefore, the deadline for issuing the FPA was at least 270 days from the extended modification date of June 6, 2023.[3] The FPA was mailed on January 5, 2024, before the deadline. Petitioner has not explained why the submitted modification here would not have triggered an extension of the limitation period under section 6235(a)(2), notwithstanding any flaws in the NOPPA.

Additionally, the requirement that the NOPPA be sent to the partnership was met. *See* § 6231(a). Respondent mailed the NOPPA to the attention of the correct designated individual, Mr. Mills, at the Welsh address. As MCML's designated individual, Mr. Mills was the "sole individual" through whom the partnership representative could act with respect to the proposed adjustments. Treas. Reg. § 301.6223-1(b)(3)(i). And because the NOPPA identified petitioner as the partnership subject to proposed adjustment, there could have been no doubt that it was sent to Mr. Mills in his capacity as designated individual for petitioner's partnership representative. Such a mailing was "to . . . the partnership representative" within the meaning of section 6231(a).

Petitioner argues in its Motion that the NOPPA was not properly issued and, therefore, the period of limitations had expired when the FPA was issued. It contends that addressing the NOPPA to MCJV rather than MCML was not a mere technical defect by virtue of the partnership representative's critical role under the BBA regime. Again, there is no dispute that Mr. Mills (the designated individual for MCML)

---

[3] The parties do not address the parenthetical in section 6235(a)(2) that would appear to give respondent an additional 60 days to issue an FPA, mirroring the 60-day extension petitioner received under section 6225(c)(7). The availability (or not) of such an extension does not make a difference to the outcome here.

and two attorneys representing petitioner received copies of the NOPPA. Additionally, petitioner timely responded to the NOPPA by requesting an extension to file a modification within the 270-day period. *See* § 6225(c)(7).

While there is little caselaw addressing taxpayer challenges to the procedural aspects of BBA partnership examination, this Court has addressed the adequacy of various other notices issued by the Commissioner under TEFRA, the predecessor to the BBA. TEFRA was enacted to address the many procedural issues that are unique to partnerships. It provided unified audit and litigation procedures to alleviate the administrative burden caused by each partner's unique circumstances. *See N. Wall Holdings, LLC v. Commissioner*, No. 27773-21, 165 T.C. slip op. at 24 (Oct. 21, 2025).

The FPA and the Notice of Final Partnership Administrative Adjustment (FPAA) are similar because they are jurisdictional notices which enable the partnership or tax matters partner to file a petition in a court for readjustment. *See* §§ 6234(a) (BBA § 1101(c)(1), 129 Stat. at 634), 6226(a) (TEFRA § 402(a), 96 Stat. at 653). The NOPPA is not a jurisdictional notice, but rather it is a prerequisite for the issuance of an FPA. § 6231(b)(2); *see JM Assets, LP*, 165 T.C., slip op. at 10. The NOPPA triggers the calculation for when a request for modification of imputed underpayments can be made. *See* § 6225(c)(7).

Caselaw addresses whether an FPAA is valid by looking at whether minimal notice was provided. *See, e.g.*, *Seneca, Ltd. v. Commissioner*, 92 T.C. 363, 367–68 (1989), *aff'd*, 899 F.2d 1225 (9th Cir. 1990) (unpublished table decision); *Chomp Assocs. v. Commissioner*, 91 T.C. 1069, 1074 (1988). Errors in an FPAA are analyzed in the same way as errors in a Notice of Deficiency. *See Sealy Power, Ltd. v. Commissioner*, 46 F.3d 382, 385–86 (5th Cir. 1995), *aff'g in part and rev'g and remanding in part on another ground*, T.C. Memo. 1992-168; *Petaluma FX Partners, LLC v. Commissioner*, T.C. Memo. 2007-254. This Court has mostly excused defects in notices issued by the Commissioner under TEFRA where the partnership actually received notice of any proposed or determined adjustments to a partnership return. *See Seneca, Ltd.*, 92 T.C. at 367; *Chomp Assocs.*, 91 T.C. at 1073–74.

We held in *Clovis I v. Commissioner*, 88 T.C. 980, 982 (1987), that "whatever form a FPAA takes, it must minimally give notice to the taxpayer that [the Commissioner] has *finally* determined adjustments

to the partnership return." In *Clovis I*, 88 T.C. at 982, the Court looked at the commonality between a statutory notice in a deficiency case and an FPAA and concluded that the relevant standard is one of minimal or adequate notice. *Chomp Assocs.*, 91 T.C. at 1074. Here, the issuance of the NOPPA resulted in the timely filing of a request for modification of an imputed underpayment, which resulted in the FPA's being issued timely.

Petitioner received adequate or minimal notice resulting in a timely filed Petition. It has not shown that it was prejudiced by errors in the NOPPA because the audit and communications between respondent and petitioner continued without interruption. After the NOPPA naming the wrong partnership representative was sent to the Welsh address, petitioner timely submitted Forms 8984 and 8980, requesting an extension of time to submit a request for modification and submitting a modification, respectively. These actions resulted in the FPA's being issued timely, and petitioner's timely filing a Petition with this Court.

Petitioner also contends that the Welsh address was the incorrect address. While petitioner mailed the request for a change of address before the issuance of the NOPPA, respondent did not process the request until August 24, 2022, which was after the NOPPA was mailed. However, petitioner received the NOPPA, and petitioner as well as petitioner's attorneys continued to list and use the Welsh address as the current address for the partnership representative for more than a year after mailing the change of address request. Even if we were to conclude that the NOPPA was not sent to the right address, actual receipt and petitioner's actions would cure the defect in mailing. *See Dees v. Commissioner*, 148 T.C. 1, 8 (2017) (citing *Mulvania v. Commissioner*, 81 T.C. 65 (1983)).

III. *Conclusion*

The NOPPA issued by respondent on July 11, 2022, was valid, and the FPA issued to petitioner was timely pursuant to section 6235(a)(2).

We have considered the arguments made by the parties and, to the extent that they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*An appropriate order will be issued.*

Reviewed by the Court.

URDA, *C.J.*, and BUCH, NEGA, PUGH, ASHFORD, COPELAND, JONES, TORO, GREAVES, MARSHALL, WEILER, WAY, LANDY, ARBEIT, GUIDER, JENKINS, and FUNG, *JJ.*, agree with this opinion of the Court.